**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DANIEL CROSBY, on behalf of himself and all other persons similarly situated,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**ELECTRONIC COMMODITIES EXCHANGE, L.P. d/b/a RITANI,**<br><br>**Defendant.** | Docket No.<br><br>**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL** |

Plaintiff, DANIEL CROSBY, ("Plaintiff" or "Mr. Crosby") on behalf of himself and all other persons similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, Robert Schonfeld, Esq. (of counsel to JOSEPH & NORINSBERG, LLC) as and for their putative class action complaint upon Defendant, ELECTRONIC COMMODITIES EXCHANGE, L.P. d/b/a RITANI ("RITANI" or "Defendant"), hereby alleges as follows:

## INTRODUCTION

1. On September 25, 2018, the U.S. Department of Justice reaffirmed its longstanding position that websites operated by places of public accommodation must be accessible to individuals with disabilities. In a letter to Representative Ted Budd, Assistant Attorney General Stephen E. Boyd stated: "The Department first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago." This interpretation aligns with Title III's mandate that the goods, services, and privileges offered by such entities are equally accessible to all, including those with disabilities. (See DOJ Letter to Congress, last accessed July 19, 2024.)

2. Plaintiff, DANIEL CROSBY, is a legally blind resident of New York County, New York. He has been diagnosed with a progressive visual impairment

rendering him legally blind, and his condition is documented by his treating ophthalmologist. (See Exhibit A.) Mr. Crosby resides in Manhattan and relies exclusively on assistive technology to navigate digital environments and conduct daily online activities independently.

3. Mr. Crosby is a proficient user of NonVisual Desktop Access ("NVDA") screen reader software, which he relies on daily to navigate digital environments independently. His fluency with keyboard commands and screen-reading protocols enables him to engage with complex content — including retail platforms, product selection pages, and online checkout systems — without assistance. NVDA's compatibility with properly coded websites is indispensable to his autonomy and digital independence.

4. This action arises from Defendant Electronic Commodities Exchange, L.P. d/b/a Ritani's failure to design, maintain, and operate its website, www.ritani.com, in a manner accessible to blind and visually impaired individuals. The website functions as an interactive retail platform for fine jewelry, engagement rings, wedding bands, loose diamonds, and gemstones, and serves as a digital gateway to Defendant's in-person preview services at locations throughout the United States, including New York. Defendant's failure to ensure equal access to these integrated services violates Plaintiff's rights under Title III of the Americans with Disabilities Act ("ADA").

5. On February 14, March 3, and April 10, 2026, Mr. Crosby visited www.ritani.com using NVDA with the intent to shop for fine jewelry for himself and his fiancée. As a legally blind consumer, he depends on accessible online shopping to avoid the logistical and emotional burdens of in-person retail environments, which often require him to seek assistance from strangers — an experience he finds uncomfortable, intrusive, and incompatible with his desire for independence. During

these visits, Mr. Crosby attempted to review and purchase two specific products: the Orielle Round Cut 14kt Yellow Gold Four-Prong Solitaire Engagement Ring for his fiancée and a wedding band from Ritani's men's collection for himself. Because the website lacked proper alternative text, contained unlabeled interactive elements, employed inaccessible image-based filter controls and product configurators, and failed to provide screen-reader-compatible navigation throughout key sections of the site, Mr. Crosby was unable to meaningfully access product information, configure available options, or complete the intended purchases.

6. These barriers included missing or meaningless alternative text on product imagery, unlabeled interactive controls within the ring customization builder, inaccessible image-based filter buttons on the collection pages, and ARIA implementation failures — each of which rendered key content unreadable or non-functional under screen-reader software. The SortSite Accessibility Validation Report conducted on www.ritani.com confirms that these violations are systemic and site-wide, contravening the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA standards, which are widely recognized as the benchmark for digital accessibility under the ADA. Exhibit B

7. Defendant Electronic Commodities Exchange, L.P. d/b/a Ritani is a limited partnership with its principal place of business at 3 Barker Avenue, White Plains, New York 10601. Defendant owns and operates www.ritani.com, a nationwide e-commerce platform offering engagement rings, wedding bands, loose diamonds, gemstones, and fine jewelry to consumers across the United States, including New York. The website also connects users to Defendant's "Free In-Person Preview" program, through which customers can meet with a Ritani Diamond Pro at shared office space locations — including locations within the New York metropolitan area — to

inspect loose diamonds and engagement rings before purchasing. Defendant's products are handcrafted in New York, establishing a clear and direct nexus between its digital platform and its brick-and-mortar and in-person operations.

8. Mr. Crosby specifically sought out Ritani for the purchase of an engagement ring and wedding band due to the company's distinctive reputation for custom-designed fine jewelry, its unique "Try Before You Buy" in-person preview program, and its direct-to-consumer pricing model that offers significant savings compared to traditional jewelry retailers. Mr. Crosby desired the Orielle Engagement Ring in particular because of its elegant four-prong solitaire design in 14kt yellow gold — a style he had researched extensively and believed he could not find at comparable quality and price through other online or physical retailers. As a blind consumer, he depends on accessible digital interfaces to independently make informed purchasing decisions for significant life events. Defendant's failure to provide a WCAG-compliant website denied him equal access to the same customization tools, product information, and purchasing services offered to sighted users. Despite its e-commerce revenues of approximately $25 million annually and its explicit adoption of an accessibility statement purporting to comply with WCAG 2.1 AA, Defendant has failed to implement and maintain basic accessibility features, reflecting a pattern of disregard for the rights of disabled individuals.

9. Plaintiff seeks injunctive relief requiring Defendant to revise its digital policies and practices to ensure that its website is — and remains — fully accessible to blind and visually impaired users. Mr. Crosby remains committed to maintaining an assistive technology regimen that supports his independence. Without remediation of the barriers described herein, he will continue to be excluded from accessing Defendant's goods and services on equal terms.

10. Defendant's ongoing failure to provide accessible digital services constitutes a denial of full and equal access under Title III of the ADA. Plaintiff respectfully requests that this Court issue a permanent injunction compelling Defendant to bring its website into compliance with federal accessibility standards.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

12. Supplemental jurisdiction over Plaintiff's state and local claims is proper under 28 U.S.C. § 1367. These claims arise under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"); and the New York State Civil Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

13. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c). Defendant Electronic Commodities Exchange, L.P. d/b/a Ritani maintains its principal place of business at 3 Barker Avenue, White Plains, New York 10601, within this District, and conducts substantial and continuous business in this District through its interactive website, www.ritani.com. Plaintiff accessed and attempted to use this website from his residence in New York County, and the discriminatory conduct giving rise to this action occurred within the jurisdiction of this Court.

14. Defendant actively engages in commercial transactions with New York residents through its website, including product selection, customization, checkout, and in-person preview services. Defendant's digital infrastructure knowingly transmits data and files into New York, and Defendant's manufacturing and business operations are

conducted in New York, establishing purposeful availment under federal precedent. See *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont.* Eighth Judicial Dist. Court, 592 U.S. ___ (2021); South Dakota v. Wayfair, Inc., 585 U.S. ___ (2018); *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); *Sanchez v. NutCo, Inc.,* 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

15. Accordingly, jurisdiction and venue are properly established in this District. Courts have consistently held that accessibility barriers encountered by users within the forum state provide a sufficient basis for asserting personal jurisdiction over website operators. Defendant's principal place of business is itself located within this District.

## NATURE OF ACTION

16. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

17. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating — for sighted, blind, and visually impaired individuals alike.

18. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

19. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

20. Plaintiff, DANIEL CROSBY, is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software, specifically NVDA for Windows.

21. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

"The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a

> change in the color of the text... The screen reading software uses auditory — rather than visual — cues to relay this same information... Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

*See also American Federation for the Blind, Screen Readers, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.*

22. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

23. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

    a. Missing text equivalents for non-text elements

    b. Unlabeled frames and navigation regions

    c. Scripts without accessible alternatives

    d. Inaccessible forms and input fields

    e. Content conveyed solely through visual presentation

    f. Inability to resize text without loss of functionality

    g. Time limits that cannot be adjusted or disabled

    h. Missing or ambiguous page titles

    i. Links lacking descriptive context

    j. Keyboard focus indicators that are not discernible

    k. Undetectable default language settings

    l. Components that trigger unexpected context changes

    m. Settings that alter context without user notice

n. Input fields lacking labels or instructions, including inaccessible CAPTCHA prompts

o. Improperly nested markup, duplicate attributes, and non-unique IDs

p. Inaccessible Portable Document Format (PDF) files

q. User interface elements whose roles and states cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## STATEMENT OF FACTS

24. Plaintiff Daniel Crosby is a legally blind consumer residing in New York County, New York. He relies exclusively on NonVisual Desktop Access ("NVDA") screen-reader software to navigate digital content and complete online transactions independently. Mr. Crosby receives ongoing ophthalmologic care and assistive-technology support, and his legal blindness is documented by his treating physician. (See Exhibit A.)

25. On February 14, March 3, and April 10, 2026, Mr. Crosby visited www.ritani.com using NVDA with the intent to purchase fine jewelry for himself and his fiancée. He specifically sought to purchase the Orielle Round Cut 14kt Yellow Gold Four-Prong Solitaire Engagement Ring for his fiancée and a men's wedding band for himself. As a blind consumer, Mr. Crosby relies on accessible online shopping to avoid the logistical and emotional strain of in-person retail, which often requires asking strangers for assistance — an experience he finds uncomfortable, intrusive, and incompatible with his desire for independence.

26. Mr. Crosby chose Ritani specifically — over other online jewelry retailers such as Blue Nile, James Allen, or Brilliant Earth — because of Ritani's distinctive reputation for custom-designed fine jewelry, its unique "Try Before You Buy" in-person preview program (available at New York-area locations),

and its direct-to-consumer pricing model that makes high-quality engagement rings accessible at lower price points than traditional retailers. Mr. Crosby was drawn in particular to the Orielle Engagement Ring's four-prong solitaire setting and 14kt yellow gold design, a combination he had researched and determined was offered by Ritani at superior value compared to comparable styles available elsewhere. His interest in Ritani as a retailer was specific, considered, and not interchangeable with other companies.

27. While attempting to navigate the engagement ring collection pages and the Orielle product page, Mr. Crosby encountered multiple accessibility barriers that prevented him from reviewing complete product information, configuring his selections, or adding items to his cart. The SortSite Accessibility Validation Report confirms these issues are systemic, noting that pages with Level A issues are unusable for some people and identifying widespread accessibility failures across www.ritani.com. The report further documents that focusable content within elements coded as aria-hidden causes NVDA to land on interactive controls and hear only silence — precisely the experience Mr. Crosby encountered when attempting to navigate Ritani's ring customization builder and product filter controls.

28. Specifically, Mr. Crosby encountered inaccessible image-based filter controls on the Engagement Rings collection page, including shape selectors, style selectors, and metal-type selectors rendered as image-based buttons without adequate screen-reader-compatible text alternatives. When NVDA attempted to navigate these filter controls, it announced only generic or meaningless labels, preventing Mr. Crosby from understanding what filter options were available or selecting the criteria relevant to his intended purchase. The SortSite report confirms that alt text across the site consists of file names or placeholders rather than meaningful descriptions, directly mirroring Mr. Crosby's experience of receiving no useful product information from NVDA on these pages.

29. Mr. Crosby also encountered significant barriers within Ritani's three-step ring builder — the primary tool through which customers select a diamond, choose a setting, and configure a complete ring. The builder's interactive elements, including the diamond selection interface, the setting configuration controls, and the step navigation buttons, were not consistently accessible via keyboard commands under NVDA, preventing Mr. Crosby from progressing through the purchase workflow. The SortSite report identifies failures in keyboard accessibility and focus management across the site consistent with the barriers Mr. Crosby encountered in the builder interface.

30. The SortSite Accessibility Validation Report identifies widespread failures in WCAG 2.1 Level A and AA compliance across www.ritani.com, including missing or meaningless alternative text on images, elements with aria-hidden attributes containing focusable content that causes silence under screen reader navigation, unlabeled interactive controls, and keyboard accessibility failures. These violations directly impacted Mr. Crosby's ability to independently review, configure, and purchase the Orielle Engagement Ring and wedding band he sought.

31. In an effort to obtain assistance with the accessibility barriers he encountered, Mr. Crosby attempted to access Defendant's accessibility statement and customer-service resources. While Defendant maintains an accessibility statement at https://www.ritani.com/pages/website-accessibility-statement purporting to commit to WCAG 2.1 AA compliance through the use of accessiBe's AI technology, the accessibility barriers Mr. Crosby encountered during his three visits demonstrate that these commitments have not translated into a meaningfully accessible user experience for blind consumers relying on NVDA. The existence of an accessibility statement is of no remedial value where the underlying barriers remain unaddressed.

32. The SortSite report confirms the systemic nature of these failures across www.ritani.com, demonstrating that the barriers Mr. Crosby encountered were

not isolated or temporary but part of a pervasive, site-wide pattern of non-compliance with WCAG 2.1 standards. Despite Defendant's annual e-commerce revenues of approximately $25 million and its explicit public commitment to digital accessibility, Defendant has failed to implement and sustain effective accessibility measures, reflecting a continuing pattern of disregard for the rights of blind and visually impaired consumers.

## CLASS ACTION ALLEGATIONS

33. Mr. Crosby remains highly motivated to return to www.ritani.com once it is made accessible. His interest is concrete, particularized, and ongoing: he still intends to purchase the Orielle Round Cut 14kt Yellow Gold Four-Prong Solitaire Engagement Ring for his fiancée and a men's wedding band for himself. These products are not reliably available to him at comparable quality and price through third-party platforms, and he requires full access to Defendant's product pages, ring builder, cart, and customer-service features to complete the intended transactions. Pursuant to Calcano v. Swarovski North America Ltd., 36 F.4th 68 (2d Cir. 2022), Mr. Crosby's intent to return is not speculative — it is grounded in his specific, documented desire to purchase identified products that remain available on Defendant's website, and his established pattern of attempting to access www.ritani.com on multiple occasions.

34. Mr. Crosby has suffered a past injury — his inability to complete his intended purchases of specific products due to documented accessibility barriers — and faces a real and immediate threat of future harm, given his stated intent to return once the website is accessible and the continuing presence of site-wide accessibility issues. His injuries are directly traceable to Defendant's failure to maintain an accessible website and are redressable through injunctive relief. Accordingly, Mr. Crosby has standing to bring this action under Title III of the ADA.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 et seq.)**

35. Plaintiff, DANIEL CROSBY, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

36. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

37. Defendant's Website, www.ritani.com, is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

38. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

39. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded,

denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

40. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

41. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section Prayer For Relief below.

**SECOND CAUSE OF ACTION**
**(Violation of the New York State Human Rights Law)**

42. Plaintiff DANIEL CROSBY, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

43. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of the Defendants. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major

life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

44. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.ritani.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

45. Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

46. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

47. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

48. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not

disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

49. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

50. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

51. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

52. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

53. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) et seq.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

54. Plaintiff, DANIEL CROSBY, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

55. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

56. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

57. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

58. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

59. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

60. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass and preventing access in violation of NYCRL § 40.

61. Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against the Plaintiff and the Subclass members.

62. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby... in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." Id.

63. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 et seq.

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

64. Plaintiff, DANIEL CROSBY, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

65. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

66. Defendant is subject to NYCHRL because it owns and operates the Website www.ritani.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

67. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therein to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

68. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

69. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

70. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

71. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and

subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

72. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

73. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

74. Plaintiff is also entitled to reasonable attorneys' fees and costs.

75. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
**(Declaratory Relief)**

76. Plaintiff, DANIEL CROSBY, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

77. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq., prohibiting discrimination against the blind.

78. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:**

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794; N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New

York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
June 26, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com